**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

April 4, 2025

LETTER TO COUNSEL

RE:   *Tina B. v. Social Security Administration*
      Civil No. 1:24-cv-01210-JMC

Dear Counsel:

On April 4, 2024, Plaintiff petitioned this Court to review the Social Security Administration's ("SSA") final decision to deny her claims for Social Security benefits. (ECF No. 1). This case was first referred to Magistrate Judge Charles D. Austin with the parties' consent, *see* 28 U.S.C. § 636; Loc. R. 301 (D. Md. 2023), and then reassigned to me on March 12, 2025. I have considered the record in this case, (ECF No. 8), and the parties' filings. (ECF Nos. 12, 16, & 17). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). This Court must uphold the decision of the SSA if it is supported by substantial evidence and if the SSA employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the Commissioner's decision, and remand the case to the Commissioner for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

### I.   PROCEDURAL BACKGROUND

Plaintiff filed a Title II application for Disability Insurance Benefits ("DIB") and a Title XVI application for Supplemental Security Income ("SSI") benefits on November 9, 2020, alleging a disability onset of May 9, 2020. (Tr. 136, 146). Her claims were denied initially, and again on reconsideration. (Tr. 149-57, 166-69). A hearing was held on via online video on August 10, 2023, before Administrative Law Judge Raghav Kotval ("ALJ"). (Tr. 42-72). Following the hearing, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 14-41). The Appeals Council declined review (Tr. 1–6), and consequently the ALJ's decision constitutes the final, reviewable decision of the SSA.

### II.   THE ALJ'S DECISION

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). In arriving at the decision to deny Plaintiff's claim, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. §§ 404.1520, 416.920.

1

"Under this process, an ALJ evaluates, in sequence, whether the claimant: '(1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to [their] past relevant work; and (5) if not, could perform any other work in the national economy.'" *Kiser v. Saul*, 821 F. App'x 211, 212 (4th Cir. 2020) (quoting *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citation omitted)).

At step three, "if a claimant fails to demonstrate that they have a disability that meets or medically equals a listed impairment, the ALJ must assess the claimant's residual functioning capacity (RFC) before proceeding to step four, which is 'the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work].'" *Id.* (quoting *Lewis v. Berryhill*, 858 F.3d 858, 861-62 (4th Cir. 2017) (alterations in original) (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(1)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. *Id.* (citing *Monroe v. Colvin*, 826 F.3d 176, 179-80 (4th Cir. 2016)). If she makes the requisite showing, the burden shifts to the Social Security Administration at step five to prove "that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Lewis*, 858 F.3d at 862 (internal citations omitted).

In this case, at step one, the ALJ found that Plaintiff has not engaged in "substantial gainful activity" since May 9, 2020, the alleged onset date. (Tr. 20). At step two, the ALJ determined that Plaintiff's psychotic disorder, affective disorder, and anxiety disorder constitute severe impairments under the relevant regulations. *Id.* The ALJ also determined that Plaintiff suffered from the non-severe impairments of linchen simplex chronicus, eczema, alopecia, hair loss, vitamin D deficiency, dysphagia, vertigo, and thrombocytosis. *Id.* At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR [§§] 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (Tr. 21). Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform simple, routine tasks. The claimant can occasionally interact with supervisors, co-workers, and the public. The claimant can occasionally adjust to changes in workplace settings.

(Tr. 23).

At step four, the ALJ determined that Plaintiff was unable to perform past relevant work as a gate guard (DOT 372.667-030),[1] executive assistant (DOT 169.167-010), and data entry clerk

---

[1] "DOT" refers to the Dictionary of Occupational Titles. "The *Dictionary of Occupational Titles*, and its companion, *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*…are Social Security Administration resources that list occupations existing in the economy and explain some of the physical and mental requirements of those occupations." *Pearson v. Colvin*, 810 F.3d 204, 212 n.1 (4th Cir. 2015) (citations omitted). In determining whether sufficient other work exists for the claimant in the national economy, the ALJ "rel[ies] primarily" on the DOT, and may also rely upon a vocational expert. *Id.* at 207 (citations omitted).

(DOT 203.582-054). (Tr. 34). Finally, after considering the testimony of a vocational expert ("VE"), the ALJ determined that although Plaintiff could not perform her past relevant work, she could perform other jobs existing in significant numbers in the national economy, including working as a janitor (DOT 358.687-010), a dishwasher (DOT 318.687-010), and a cook's helper (DOT 317.687-010). (Tr. 34-35). The ALJ therefore concluded that Plaintiff was not disabled during the relevant time frame. (Tr. 35).

### III.     LEGAL STANDARD

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," which "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (internal citations and quotations omitted). In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (internal citations and quotations omitted). Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

### IV.     ANALYSIS

On appeal, Plaintiff makes two primary arguments: (1) the ALJ's analysis of Plaintiff's limitations in concentration, persistence, or pace was flawed and runs afoul of the Fourth Circuit's decision in *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015); and (2) the ALJ improperly discounted evidence of Plaintiff's subjective symptoms and misapplied the relevant legal standards, rendering the decision unreviewable and unsupported by substantial evidence. I agree that the ALJ's opinion did not comport with *Mascio*, and I therefore remand the case for further analysis. Because I find that Plaintiff's first argument is dispositive, I will not reach Plaintiff's second argument.

In *Mascio*, the United States Court of Appeals for the Fourth Circuit determined that remand was appropriate for three distinct reasons, including, as pertinent to this case, the inadequacy of the ALJ's evaluation of "moderate difficulties" in concentration, persistence, or pace. *Id.* at 637–38. At step three of the sequential evaluation, the SSA determines whether a claimant's impairments meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (2018). Listings 12.00 *et seq.* pertain to mental impairments. *Id.* at § 12.00 (2018). The relevant listings therein consist of: (1) "paragraph A criteria," which consist of a set of medical findings; (2) "paragraph B criteria," which consist of a set of impairment-related functional limitations; and (3) "paragraph C criteria," which relate to "serious and persistent" disorders lasting at least two years with a history of ongoing medical treatment and marginal adjustment. *Id.* § 12.00(A), (G). A claimant's impairments meet the listings relevant by satisfying either the paragraph A and paragraph B criteria, or the paragraph A and paragraph C criteria. *Id.* § 12.00(A).

3

Paragraph B consists of four broad functional areas including: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *Id.* § 12.00(A)(2)(b). The functional area of concentration, persistence, or pace "refers to the abilit[y] to focus attention on work activities and stay on task at a sustained rate." *Id.* § 12.00(E)(3).

The SSA employs the "special technique" to rate a claimant's degree of limitation in each functional area, based on the extent to which the claimant's impairment "interferes with [the claimant's] ability to function independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. §§ 404.1520a(b), (c)(2), 416.920a(b), (c)(2). The SSA uses a five-point scale to rate a claimant's degree of limitation in the four areas: none, mild, moderate, marked, or extreme. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). A moderate limitation signifies that the claimant has only a fair ability to function in the relevant area of mental functioning. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00(F)(2)(c). The functional area of "[c]oncentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Id.* at § 12.00(C)(3). Social Security regulations do not define limitations in concentration, persistence, or pace "by a specific number of tasks that [a claimant is] unable to complete." *Id.* The regulations also offer little guidance as to the meaning of "moderate" limitations. *See Lewis v. Comm'r, Soc. Sec.*, 2017 WL 2683948, at *2 (D. Md. June 21, 2017).

The Fourth Circuit remanded *Mascio* because the hypothetical the ALJ posed to the VE—and the corresponding RFC assessment—did not include any mental limitation other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. 780 F.3d at 637–38. The Fourth Circuit specifically held that it "agree[s] with other circuits that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." *Id.* at 638 (quoting *Winschel v. Comm'r, Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)) (internal quotation marks omitted).

In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Although the Fourth Circuit noted that the ALJ's error might have been cured by an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC, it held that absent such an explanation, remand was necessary. *Id.* Simply put, the *Mascio* Court held that where an ALJ finds moderate difficulties at steps two or three of the sequential evaluation, the ALJ is then required either to include the appropriate limitations that would account for such difficulties in the RFC, or to explain why no such limitations are necessary.

In *Shinaberry v. Berryhill*, the Fourth Circuit clarified *Mascio*, rejecting "a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." 952 F.3d 113, 121 (4th Cir. 2020). The Court held that remand is not required where an "'ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." *Id.* (quoting *Mascio*, 780 F.3d at 638). Although the ALJ in *Shinaberry* did not

4

include a limitation in the claimant's RFC corresponding to their moderate limitations in concentration, persistence, or pace, the Court held that remand was improper because the ALJ adequately explained that claimant's limitation, which stemmed from a "lifelong, borderline intellectual disability," did not affect her ability to work, as evidenced by her 20-year work history. *Id.* at 122. "Thus, post-*Mascio* and its progeny, 'an ALJ may account for a moderate CPP limitation with an RFC determination that a claimant can complete simple, routine tasks provided the conclusion is supported by substantial evidence.'" *Laura G. v. Kijakazi*, No. 22-1380-BAH, 2023 WL 1865617, at *3 (D. Md. Feb. 9, 2023) (quoting *Terri S. v. Kijajazi*, No. DLB-19-3607, 2021 WL 5395960, at *2 (D. Md. Nov. 18, 2021) (citing *Sizemore v. Berryhill*, 878 F.3d 72, 80-81 (4th Cir. 2017); *Shinaberry*, 952 F.3d at 121-22)).

In this case, the ALJ assessed Plaintiff's mental impairments pursuant to the "special technique," and found that Plaintiff had moderate limitations in concentration, persistence, or pace. (Tr. 20). The ALJ's complete assessment reads:

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant had trouble remembering details and she consulted her cell phone. (Exhibit B6F/2). The claimant presented with fragmented remote memory, incomplete recent memory, normal immediate retention and recall, and normal impulse control. (Exhibit B8F). The claimant's mental status was intact to conversation without fluctuating level of consciousness. (Exhibit B10F/2). The claimant requested and obtained form completion from her treating sources. (Exhibit B1/F1, B6F/2, B8F, B9F).

(Tr. 22).

In determining Plaintiff's RFC, the ALJ stated that she was able to perform "simple, routine tasks," could "occasionally interact with supervisors, co-workers, and the public," and could "occasionally adjust to changes in workplace settings." (Tr. 33). Plaintiff contends that the ALJ here committed a similar error to that in *Mascio* because he determined that Plaintiff has moderate limitations in concentration, persistence, or pace, but subsequently failed to incorporate an appropriate limitation in the RFC assessment or, in the alternative, to indicate why his moderate limitations did not translate into a limitation in the RFC assessment. *Mascio.* 780 F.3d at 638 (finding "simple, routine tasks or unskilled work" to be insufficient to address a claimant's moderate limitations in concentration, persistence, or pace).

The Court agrees with Plaintiff in that the ALJ's analysis is insufficient under *Mascio* and *Shinaberry*. The ALJ apparently tried to account for Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace by explaining:

> The claimant has also not met their burden in proving they cannot remain on pace long enough to perform a simple task. The claimant has no significant pace limitation when performing the adopted residual functional capacity assessment. Of course, another way of saying the same thing is, the claimant would have a pace limitation if doing more than the specifics of the adopted residual functional capacity. For example, if they were in a work environment where they would have

5

> constant decision making, and frequent changes in the work setting, then, yes, they may very well have problems maintaining pace, but that kind of work is precluded by the adopted residual functional capacity assessment. Thus while the claimant has [a] moderate limitation in concentration[,] persistence and pace, it is a limitation as applied to more complex and detailed tasks to which [s]he would be limited to in the residual functional capacity, for which they would have no such limitations.

(Tr. 33-34). This narrative, however, does nothing more than confine Plaintiff to simple, routine tasks—which is an accommodation flatly rejected as insufficient by *Mascio*. 780 F.3d at 638 (holding that "an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work."). Accordingly, "unless the ALJ adequately explained why Plaintiff's moderate CPP difficulties did not translate into a limitation in the RFC, *Mascio* suggests remand." *Laura G.*, 2023 WL 1865618, at *3 (citing *Shinaberry*, 952 F.3d at 121).

The Commissioner maintains that *Mascio* only requires remand where a reviewing court is "left to guess" at how an ALJ arrived at his conclusions, and that, here, "the ALJ's decision provides more than sufficient articulation to allow this court to review the residual capacity finding." (ECF No. 16 at 14-15) (quoting *April T. v. Kijakazi*, No. CV 22-2820-BAH, 2023 WL 5751719, at *3 (D. Md. Sept. 5, 2023) (citation omitted)). For support, the Commissioner cites to the ALJ's "detailed consideration of the evidence" which included citations to Plaintiff's "medical records, prior administrative medical findings and medical opinions, Plaintiff's own subjective statements, and Plaintiff's activities of daily living[.]" (ECF No. 16 at 9, 15).

That said, the "issue in this case is not whether the record contains evidence that might support the ALJ's conclusion; it is whether the ALJ explained the apparent discrepancy between [his] step three finding and [his] RFC assessment." *Talmo v. Comm'r Soc. Sec.*, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (June 5, 2015). The ALJ did not connect the evidence he considered to that discrepancy, and I am unwilling to infer such a connection. *Id.* By way of example, the ALJ considered prior administrative findings from May 5, 2020, in which a different ALJ also concluded that Plaintiff had a moderate limitation with regards to concentration, persistence, and pace, and therefore found that Plaintiff required a job "in a low stress work environment…which would not require a fast pace or production quotas such as would customarily be found on an assembly line." (Tr. 29, 81). The ALJ in this matter found the 2020 findings to be persuasive, but did not incorporate a similar pace restriction in his own RFC or explain why a pace restriction of that kind should be rejected. (Tr. 29).

Pursuant to *Mascio* and *Shinaberry*, once the ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in the RFC assessment, or explain why no such limitation is necessary. *Id.* [2] In this case, the ALJ did neither, and failed to build an "accurate and logical

---

[2] *See also Capps v. Berryhill*, 2018 WL 4616018, at *6 (D. Md. Sept. 26, 2018) ("The ALJ was required to include either additional limitations in the RFC assessment that are acceptable under the *Mascio* standard **or** a narrative explanation for why limitations in concentration, persistence or pace are not required. Commissioner cannot change the purpose of the ALJ's narrative discussion post hoc to meet the requirements of *Mascio*.") (emphasis in original) (internal citation omitted).

6

bridge from [that] evidence to [his] conclusion." *See Travis X.C. v. Saul*, No. GJH-18-1210, 2019 WL 4597897, at *4 (D. Md. Sept. 20, 2019). Considering this inadequacy, I must remand the case to the SSA for further analysis consistent with the Fourth Circuit's mandate in *Mascio*. In doing so, I express no opinion as to whether the ALJ's ultimate decision that Plaintiff was not disabled was correct or incorrect.

## V.     CONCLUSION

For the reasons set forth herein, both parties' motions (ECF Nos. 12, & 16) are DENIED. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED due to inadequate analysis. The case is REMANDED for further proceedings in accordance with this opinion. The Clerk is directed to CLOSE this case. Despite the informal nature of this letter, it should be flagged as an opinion.

Sincerely yours,

/s/

J. Mark Coulson
United States Magistrate Judge
April 4, 2025